**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 07-cv-00781-CMA

TOMAS M. GARCIA,

      Petitioner,

v.

STEVE HARTLEY, Warden of Limon Correctional Facility, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER ON PETITION FOR HABEAS CORPUS

---

      This matter is before the Court on Petitioner Tomas M. Garcia's Petition Under

28 U.S.C. § 2254 For Writ of Habeas Corpus ("Petition") (Doc. # 10).  Respondents

answered the Petition (Doc. # 21).  After reviewing the pertinent portions of the record in

this case including the Petition, the Answer, and the state court record, the Court

concludes that the Petition should be denied.

## I.  BACKGROUND

      Petitioner was charged and tried jointly in two criminal cases, 00CR2580 and

00CR2644, with second degree kidnapping, two sexual assault counts against two

victims identified as JK and CG, second degree assault, two crime of violence counts,

third degree assault, and false imprisonment.  A jury trial was held in Jefferson County

District Court ("Trial Court") from February 28, 2002 to March 9, 2002.  On March 9,

2002, Petitioner was convicted of all charges except for one charge of sexual assault against CG.

On April 9, 2002, Petitioner filed a *pro se* "Motion in Arrest of Judgment" in the Trial Court, in which he made general allegations of ineffective assistance of counsel, including: (1) trial counsel failed to inform Petitioner of the charges on which he was convicted, (2) trial counsel concealed evidence, (3) trial counsel failed to call witnesses, and (4) trial counsel failed to raise due process violations (Trial Court Record, Vol. 1 at 256). Also on April 9, 2002, Petitioner filed a *pro se* Amended Motion for a New Trial, again asserting general allegations of ineffective assistance of counsel, as well as a *pro se* Motion to Set Aside Sentencing, asserting that defense counsel was not competent to represent him and requesting that the sentencing be set aside until new evidence could be presented. *See id.* at 259, 265.

Petitioner's sentencing was originally scheduled for April 9, 2002. On that date, Petitioner informed the Trial Court that he no longer wanted trial counsel to represent him, and requested a continuance of the sentencing hearing (Trial Court Transcript, Vol. XXIV at 3-6). After questioning Petitioner, the Trial Court excused trial counsel Mr. Charles Morphew from further representation in Petitioner's case, and further agreed to continue the sentencing hearing to April 11, 2002, on the grounds that Petitioner had just received the presentence report. *Id.* at 8-12. The Trial Court then addressed Petitioner's Motion for New Trial and Motion in Arrest of Judgment, and denied both motions on the grounds that Petitioner had not established that he received

2

ineffective assistance of counsel, or that there was newly discovered evidence.  *Id.* at

30-31.  The Trial Court further denied Petitioner's Motion to Set Aside Sentencing, on

the grounds that no sentencing had occurred.  *Id.* at 32.

On April 11, 2002, Petitioner was sentenced to two years on the third degree

assault count, one year on the false imprisonment count, forty-eight years on the

kidnapping count, twenty years to life on the sexual assault count, and sixteen years

on the second degree assault count.  The Trial Court ordered the felony counts to

run consecutively, and the misdemeanor sentences to run concurrent with the felony

sentences.  Therefore, the total sentence imposed was eighty-four years to life.

The Trial Court also designated Petitioner a sexually violent predator.

Also on April 11, 2002, Petitioner filed a *pro se* "Amended Motion to Admit

Witnesses and Evidence" (Trial Court Record, Vol. 1 at 274).  In this motion, Petitioner

presented the names of various witnesses that he alleged could have assisted in his

defense, but for the failure of defense counsel to call them at trial.  *Id.*  On May 2, 2002,

the Trial Court issued a written order denying Petitioner's amended motion to admit

witnesses and evidence (Trial Court Record, Vol. 2 at 297).  Construing the motion as

a Colo. Crim. P. Rule 35(c) motion, the Trial Court found that no evidentiary hearing

was necessary, because it presented no meritorious claims.  Finding that Petitioner

had established no grounds for relief, the Trial Court denied all of Petitioner's pending

motions.

On May 20, 2002, Petitioner filed a second amended motion for new trial, this time attaching an affidavit from a private investigator, Frank A. Pugliese. *Id.* at 308. In the second amended motion, Petitioner again asserted that he was entitled to a new trial on the grounds of newly discovered evidence, ineffective assistance of counsel, prosecutorial misconduct, and various other errors at trial. *Id.* On May 22, 2002, Petitioner filed his notice of direct appeal with the Colorado Court of Appeals ("CCA"). *Id.* at 317. Apparently due to extensive delays in obtaining the full trial court record and transcripts, Petitioner's opening brief on appeal was not filed until October 6, 2004 (Doc. # 21at Ex. A). In his appeal, Petitioner raised the following issues: (1) whether the Trial Court properly denied the motion to suppress; (2) whether the two cases were properly joined for trial; (3) whether evidence of his attempt to intimidate and discredit JK was properly admitted; (4) whether the court erred in denying his motions filed before and after sentencing; (5) whether the sexual assault conviction merged into the kidnapping conviction and whether the sentences for each offense must run concurrently; (6) whether the Colorado Sex Offender Lifetime Supervision Act is constitutional; and (7) whether the sentences imposed in this case were excessive. *See id.*

The CCA denied Petitioner's claims and affirmed the conviction on December 22, 2005. *See People v. Garcia*, No. 02CA1027 (Colo. Ct. App. Dec. 22, 2005) (unpublished decision) (Doc. # 21 at Ex. D). Petitioner filed a petition for writ of

certiorari on January 25, 2006, *id.* at Ex. E, which was denied on April 17, 2006, *id.* at Ex. F.  The mandate issued on April 27, 2006.  *Id.* at Ex. G.

Represented by counsel, Petitioner filed the instant amended petition for habeas corpus on June 11, 2007, arguing that: (1) his Fourth Amendment rights were violated by the warrantless search of his car and home; and (2) he received ineffective assistance of counsel at trial.[1]

## II.  LEGAL STANDARD

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court.  *See Estelle v. Mcguire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  "When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254 . . . . [it] does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter*."  *Coleman v. Thompson*, 501 U.S. 722, 730 (1991) (internal quotations and citations omitted).  The exhaustion of state remedies requirement in federal habeas cases dictates that a state prisoner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

---

[1]   The Court notes that Petitioner originally asserted a speedy trial claim, but that he has since withdrawn this claim.  *Compare* Petition (Doc. # 1) with Amended Petition (Doc. # 10).

Because Petitioner filed his Petition after April 24, 1996, the effective date of

the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), that statute

governs the Court's review.  *Cannon v. Mullin,* 383 F.3d 1152, 1158 (10th Cir. 2004)

(citing *Rogers v. Gibson,* 173 F.3d 1278, 1282 n. 1 (10th Cir. 1999)).  Under the

AEDPA, a district court may only consider a habeas petition when the petitioner argues

that he is "in custody in violation of the Constitution or laws or treaties of the United

States."  28 U.S.C. § 2254(a).

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be

issued with respect to any claim that was adjudicated on the merits in state court unless

the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant

to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).

The threshold question pursuant to § 2254(d)(1) is whether Petitioner seeks to apply a

rule of law that was clearly established by the Supreme Court at the time his conviction

became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established

federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's

decisions as of the time of the relevant state-court decision." *Id.* at 412.  Furthermore,

> [C]learly established law consists of Supreme Court holdings in cases
> where the facts are at least closely-related or similar to the case *sub
> judice*.  Although the legal rule at issue need not have had its genesis
> in the closely-related or similar factual context, the Supreme Court must
> have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of the Court's inquiry

pursuant to § 2254(d)(1).  *See id.* at 1018.  If a clearly established rule of federal law is

implicated, the Court must determine whether the state court's decision was contrary to

or an unreasonable application of that clearly established rule of federal law.  *See*

*Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law
> if: (a) "the state court applies a rule that contradicts the governing law set
> forth in Supreme Court cases"; or (b) "the state court confronts a set of
> facts that are materially indistinguishable from a decision of the Supreme
> Court and nevertheless arrives at a result different from [that] precedent."
> *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal
> quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at
> 405).  "The word 'contrary' is commonly understood to mean 'diametrically
> different,' 'opposite in character or nature,' or 'mutually opposed.'"
> *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of
> clearly established federal law when it identifies the correct governing
> legal rule from Supreme Court cases, but unreasonably applies it to
> the facts.  *Id.* at 407-08.  Additionally, we have recognized that an
> unreasonable application may occur if the state court either unreasonably
> extends, or unreasonably refuses to extend, a legal principle from
> Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

7

The Court's inquiry pursuant to the "unreasonable application" clause is an objective one. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.*

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Petitioner bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the Court "must uphold the state court's summary decision unless

8

[an] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full *de novo* review of the petitioner's claims." *Id.*

## III.  DISCUSSION

As a preliminary matter, Respondents do not challenge the timeliness of the Petition under the one-year limitation period set forth in 28 U.S.C. § 2244(d).  However, Respondents argue that a portion of Petitioner's claim of ineffective assistance of counsel is unexhausted pursuant to 28 U.S.C. § 2254(b)(1).

**A.     Exhaustion of State Remedies and Procedural Default**

Pursuant to 28 U.S.C. § 2254(b)(1), a petition for a writ of habeas corpus may not be granted unless it appears that the petitioner has exhausted state remedies or that no adequate state remedies are available or effective to protect the applicant's rights.  *See O'Sullivan*, 526 U.S. at 838; *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).  A claim has been exhausted when it has been "fairly presented" to the state court.  *Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  Fair presentation requires that the federal issue be presented properly "to the highest state court, either by direct review of the conviction or in a postconviction attack."  *Dever*, 36 F.3d at 1534.

Furthermore, the "substance of a federal habeas corpus claim" must have been presented to the state courts in order to satisfy the fair presentation requirement. *Picard,* 404 U.S. at 278; *see also Nichols v. Sullivan,* 867 F.2d 1250, 1252 (10th Cir. 1989). Although fair presentation does not require a habeas corpus petitioner to cite "book and verse on the federal constitution," *Picard,* 404 U.S. at 278 (internal quotation marks omitted), "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts." *Anderson v. Harless,* 459 U.S. 4, 6 (1982) (*per curiam*).  Instead, a claim must be presented as a federal constitutional claim in the state court proceedings in order to be exhausted.  *See Duncan v. Henry,* 513 U .S. 364, 365-66 (1995) (per curiam).

Respondents argue that Petitioner's ineffective assistance counsel claim is comprised of two sub-claims: (1) trial counsel's failure to call witnesses, and (2) trial counsel's failure to investigate (Doc. # 21at 10).  Respondents assert that Petitioner raised the first sub-claim in trial court, and this claim was addressed on direct appeal. Therefore, Respondents concede that this claim was properly exhausted.  With regard to the second sub-claim, Respondents contend that Petitioner raised this claim in his second amended motion for a new trial, filed on May 20, 2002, which was not ruled on by the Trial Court because Petitioner divested it of jurisdiction by filing his notice of appeal. *Id.*

Whether or not Petitioner has procedurally defaulted a portion of his ineffective assistance of counsel claim is not as clear-cut as presented by Respondents.  This is

because, upon direct appeal, Petitioner's ineffective assistance of counsel claim was presented within the rubric of a claim that the state court committed reversible error by failing to hold an evidentiary hearing on his postconviction motions.  However, because the Court finds that Petitioner's claim of ineffective assistance of counsel, in its entirety, can be disposed of on the merits, the Court will bypass the problematic issue of procedural bar.  *See Cannon v. Mullin*, 383 F.3d 1152, 1159 (10th Cir. 2004) (citing *Romero v. Furlong*, 215 F.3d 1107, 1111 (10th Cir. 2000) (finding that "[w]hen questions of procedural bar are problematic . . . a federal court may exercise its discretion to bypass the procedural issues and reject a habeas claim on the merits.")).

**B.    The Merits of Petitioner's Exhausted Claims**

      1.    <u>Fourth Amendment Claim</u>

In his first claim, Petitioner asserts that the Trial Court's failure to suppress evidence obtained by the police as a result of a warrantless entry into his home and car, without exigent circumstances, violated his Fourth Amendment rights (Doc. # 10 at 14-24).  Respondents assert that Petitioner's Fourth Amendment claims have been litigated in the state courts and, therefore, that Petitioner has already been afforded a full and fair opportunity to argue these claims (Doc. # 21 at 14).

The Fourth Amendment protects against unreasonable search and seizure and is generally enforced through the exclusionary rule.  *See, e.g., Illinois v. Gates*, 462 U.S. 213, 254 (1983); *Stone v. Powell*, 428 U.S. 465, 482-87 (1976).  "The purpose of the exclusionary rule is not to redress the injury to the . . . victim . . . .  Instead, the rule's

prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." *United States v. Calandra*, 414 U.S. 338, 347 (1974).  Although habeas review is generally available for constitutional violations, *see* 28 U.S.C. § 2254(a), due to the nature of a Fourth Amendment violation and remedy, a federal court's review is limited for alleged Fourth Amendment Violations.  *See Stone*, 428 U.S. at 494.  In *Stone*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Id.*  This limitation on federal habeas corpus review is grounded on the determination that the purposes behind the exclusionary rule do not require that it be applied during federal habeas review.  *Id.*  The Supreme Court noted that, in the federal habeas corpus context, "the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force."  *Id.*

Although the Supreme Court has not set forth a precise meaning of the phrase "opportunity for full and fair litigation," the Tenth Circuit has determined that it:

> includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim.  It also include the full and fair evidentiary hearing contemplated by *Townsend* [*v. Sain*, 372 U.S. 293 (1963)].  Furthermore, it contemplates recognition and at least colorable application of the correct Fourth Amendment constitutional standards.

12

*Gamble v. Oklahoma*, 583 F.2d 1161, 1165 (10th Cir. 1978).  "Thus, a federal court is not precluded from considering Fourth Amendment claims in habeas corpus proceedings where the state court willfully refuses to apply the correct and controlling constitutional standards."  *Id.*

As argued by Respondents with regard to this claim, as substantiated by the record, and as undisputed between the parties, the Petitioner filed a pre-trial motion to suppress and did receive a hearing on the allegations raised in that motion on April 17, 2001 (Doc. # 21 at 14); (Doc. # 10 at 9); (Trial Court Transcript, Vol. 6).  Therefore, the Court first finds that the state court proceedings sufficed to provide Petitioner with an opportunity for full and fair litigation of this claim.  Second, Petitioner has pointed to no authority mandating reversal but ignored by the state court, and this Court has found none.  *See Gamble*, 583 F.2d at 1165.

Finally, while the Colorado state courts looked to both state and federal case law in making their decisions on Petitioner's allegations, the rulings in the cases which were cited are solidly based in Fourth Amendment precedent as set forth by the United States Supreme Court (Trial Court Transcript, Vol. 6 at 156-69); (Doc. # 21 at Ex. D).  Under this precedent, the CCA proceeded to determine that, based on the entire record before it, there was no constitutional concern present with regard to the warrantless search of Petitioner's car and house.  Petitioner has failed to present any well-pled facts or any facts at all from which it can be inferred that the CCA failed to recognize or willfully refused to apply the correct and controlling constitutional standards in this

13

regard, and no such evidence is apparent from the record.  *See id.*  Petitioner merely

disagrees with the result, and would like this Court to reconsider these issues *de novo*.

However, that is not the Court's function nor an appropriate review to be undertaken in

a federal habeas case.  Accordingly, Petitioner is not entitled to federal habeas review

of his Fourth Amendment claims, and the Court finds that claim one must be dismissed.

>        2.        Ineffective Assistance of Counsel

In his second claim, Petitioner alleges that he received ineffective assistance of

counsel because: (1) trial counsel failed to properly investigate his case, and (2) trial

counsel failed to interview and/or call witnesses who would have provided exculpatory

evidence material to his defense (Doc. # 10 at 25-42).

It was clearly established when Petitioner was convicted that a defendant has a

right to effective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668

(1984).  To establish that his trial counsel was ineffective, Petitioner must demonstrate

both that counsel's performance fell below an objective standard of reasonableness and

that counsel's deficient performance resulted in prejudice to his defense.  *See id.*

at 687-88.  In addition, "[j]udicial scrutiny of counsel's performance must be highly

deferential."  *Id.* at 689.  There is a "strong presumption" that counsel's performance

falls within the range of "reasonable professional assistance."  *Id.*  It is Petitioner's

burden to overcome this presumption by showing that the alleged errors were not sound

strategy under the circumstances.  *See id.*  Under the prejudice prong, Petitioner must

establish "a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." *Id.* at 694. If Petitioner fails to satisfy his burden with regard to either prong of the Strickland test, his ineffective assistance of counsel claim must be dismissed. *See id.* at 697. Finally, ineffective assistance of counsel claims are mixed questions of law and fact. *See id.* at 698.

The Trial Court did not hold an evidentiary hearing on Petitioner's ineffective assistance of counsel claim. However, the Court notes that on March 7, 2002, upon conclusion of the People's presentation of evidence, Petitioner's trial counsel, Mr. Charles Morphew, informed the Trial Court that he needed to address "some ethical issues" that had arisen with his representation of Petitioner (Trial Court Transcript, Vol. XXI at 38). For that reason, Mr. Morphew requested permission to make a record outside the presence of the district attorneys and the Trial Judge. *Id.* This transcript was then sealed for reasons of attorney-client privilege. However, because the sealed proceedings relate to trial counsel's representation of Petitioner, and because Petitioner has now asserted a claim of ineffective assistance of counsel, the Court finds that Petitioner has impliedly waived his attorney-client privilege with respect to this record. Implied waiver of the attorney-client privilege may occur when a defendant claims ineffective assistance of counsel as to any communications relevant to the defendant's claim of ineffective assistance of counsel. *See Bittaker v. Woodford*, 331 F.3d 715, 716 (9th Cir. 2003) ("It has long been the rule in the federal courts that, where a habeas petitioner raises a claim of ineffective assistance of counsel, he waived the attorney-client privilege as to all communications with his allegedly ineffective lawyer."); *Johnson*

15

*v. Alabama*, 256 F.3d 1156, 1178 (11th Cir. 2001) ("By alleging that his attorneys

provided ineffective assistance of counsel in their choice of a defense strategy,

[Petitioner] put at issue - and thereby waived - any privilege that might apply to the

contents of his conversations with those attorneys to the extent those conversations

bore on his attorneys' strategic choices."); *Wharton v. Calderon*, 127 F.3d 1201, 1203

(9th Cir. 1997) (waiver extends to communications at issue in effective assistance

claims).  Therefore, to the extent that the information contained within the sealed record

is relevant to Mr. Morphew's investigation of the case and his strategic decisions at trial,

the Court will set forth and examine this information below.

First, Petitioner addressed the Trial Court and stated his reasons for his

dissatisfaction with Mr. Morphew (Trial Court Transcript, Vol. XXI at 40).  Petitioner's

arguments are similar to the assertions set forth in the instant Petition; to wit, that he

had given the names of his witnesses to counsel but counsel was not going to call them,

and that he did not feel an adequate investigation had taken place.  *Id.* at 40-43.  After

Petitioner's statement, Mr. Morphew proceeded to make a record outside the presence

of the Trial Judge.  *Id.* at 44.  The court-appointed investigator for Petitioner, Mr. Don

Brandsma, provided the following statement:

> We have been working on this case with Mr. Morphew since early
> December.  We have made every effort to make contact with every
> witness that's been presented to us.  We have been promised information
> on numerous occasions, written information . . . on numerous occasions
> by [Petitioner].  We have, one week in particular, I went to the jail five
> times, myself, to get that information, did not get that information,
> promised on five separate occasions, including a Saturday.
>     . . . .

We did get a map of how to locate one of the witnesses, which we did locate that witness.  That witness did not provide the same information that [Petitioner] thought he would provide, which is more than likely why he is not here today.  I have made numerous efforts in the last couple days to have another witness, [Nahtania][2] Garcia, [Petitioner's] daughter here.  They do not have a phone, so I have had to go down there, drive down there myself to make contact, and have asked on two occasions - - the last two days, to have her call me, because we wanted to ask her some additional questions, and also let her know that we would need her here today.

In addition, I also stopped at her apartment this morning and knocked on the door and rang the doorbell to see if I could get things moving, to see if they needed a ride out here this morning.  I couldn't get anybody to come to the door this morning from that home.

There are witnesses, as [Petitioner] said, that have warrants outstanding.  Quite frankly, the one witness that I'm aware of that has a warrant outstanding is not anxious to testify, at least that's what I have been told by her, the recollection of all of the events is very vague, she admits that she was using both alcohol and drugs very heavily during that time, and so I'm sure that Mr. Morphew made the judgment call that, more than likely, she would not be helpful to us, since she had no clear recollection of the events.

One of the other witnesses, Renee Nighting, who was going to be a key witness, based on the information provided by [Petitioner] . . . . I asked her about her recollection about the evening that [Petitioner] was hoping that she could testify to, and was told that she did not even know [Petitioner] at that time.

What she told Mr. Morphew and me the first time I met her in December was that she had met [Petitioner] in jail, had not known him previously, and that was the truth, and so, obviously, that is probably why she is not here.

*Id.* at 45-48.

---

[2]   Throughout various court documents, Petitioner's daughter is identified as "Natanya" Garcia.  However, in her affidavits, she identifies herself as Nahtania Garcia.  *See* Petition at Exhibits C, H & I.  Therefore, the Court has used the latter spelling of her name.

Mr. Morphew then made the following record:

>   [Petitioner] was provided over a thousand pages of discovery
>   initially in this case, and was asked to go through that discovery and
>   respond to me, he agreed to do that within seven to ten days.  It was a lot
>   longer than that, and he actually turned all of the documentation to a lady
>   named Renee Nighting.
>
>   During the months that we had been working together, [Petitioner]
>   has expressed that he will provide information to me when it's needed,
>   there were constant delays, he didn't trust me, so he did not provide
>   information, it was, 'you'll get it when I'm ready to give it to you.'
>
>   I have visited [Petitioner], and every time I visit with [Petitioner],
>   I inquire as to where we're going with this case, I think the trust factor
>   began to get better, and eventually, [Petitioner] did give me . . . lists of
>   witnesses, with what he believed their testimony would be.  That list
>   includes, but certainly was not limited to, [Nahtania] Garcia and Jamie
>   Holloway, and Dave Edwards, Renee Nighting, Una Martinez, those
>   were probably the five key witnesses in this case that would establish
>   [Petitioner's] locations at the time of the [CG] incident, and would allegedly
>   place the victim [JK] at particular places and times when it was important
>   in that case, and also provide an alibi for [Petitioner] in the [JK] case.
>
>   I have spoken to each of those people, the testimony would not
>   be as presented to me by [Petitioner].  I am certainly under an ethical
>   responsibility to not bring people into court and to put on testimony that
>   I believe to be untrue, and therefore, those people are not present today
>   for that reason.

*Id.* at 48-49.  The Court will evaluate Petitioner's claims of ineffective assistance of

counsel in light of the record made by Petitioner's trial counsel and trial investigator.

>   a.      *Failure to Investigate*

As a preliminary matter, the Court notes that when the CCA reviewed Petitioner's

direct appeal, it did not address the portion of his ineffective assistance of counsel claim

that alleged that trial counsel failed to investigate (Doc. # 21 at Ex. D, pp. 16-18).

Ordinarily, the deferential AEDPA standards apply to federal habeas claims; however, when, as here, the state court has not adjudicated the claim on the merits, the AEDPA standards do not apply.  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003) (citation omitted).  Instead, the court reviews "questions of law *de novo* and questions of fact for clear error."  *Id.*

"In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  *Strickland*, 466 U.S. at 691.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  *Id.* at 690-91.  Further, a tactical decision by counsel with which the defendant later disagrees is not a basis for a claim of ineffective assistance of counsel.  *See, e.g., Guam v. Santos*, 741 F.2d 1167, 1169 (9th Cir. 1984).  Indeed, where it is possible that the failure to present evidence was a "difficult but thoughtful tactical decision," a reviewing court must presume that counsel's conduct was "within the range of competency."  *Harris v. Pulley*, 885 F.2d 1354, 1368 (9th Cir. 1988).  Finally, conclusory allegations without supporting factual averments are insufficient to support a claim of ineffective assistance of counsel.  *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).

 In support of his claim that trial counsel failed to investigate his case, Petitioner

has provided the affidavit of his private investigator Frank Pugliese, hired by Petitioner

after conclusion of the trial (Doc. # 10 at Ex. A).[3]  Based upon this affidavit, Petitioner

argues that:

> According to postconviction investigator, Frank Pugliese, a proper
> investigation of this case would have revealed that: (1) [e]vidence was
> removed or added to the crime scene vehicle; (2) the injuries sustained
> by victim, [JK] could not have physically been created by the Defendant;
> (3) [t]he alleged victim perjured herself while under oath; (4) [t]he witness
> for the prosecution, Joseph Taylor, gave a statement that Jamie Holloway
> and the victim were in a dispute over the Defendant while in the car and
> [JK] attempted to hit Jamie Holloway with a bottle, when Ms. Holloway
> retaliated by striking the victim in the head with a bottle; and (5) the victim
> [JK] gave numerous inconsistent statements.

(Doc. # 10 at 37) (citation and internal quotations omitted).  The Court will examine

these allegations as set forth below.

> 1.      The Affiant has examined investigator's photos of injuries, and the
>         crime scene.  Evidence was removed or added to the crime scene
>         vehicle.

*Id.* at Ex. A, p. 2.

 Here, Petitioner's investigator states, without any further supporting facts or

information, that based upon his appraisal of certain photos that are not identified with

any specificity, nor provided to the Court, evidence was either removed or added before

the pictures were taken.  *Id.* at 1.  The Court notes that, in his affidavit, Mr. Pugliese

---

 [3]  Petitioner's trial counsel, Mr. Charles Morphew, and presumably Petitioner's trial
investigator, Mr. Don Brandsma, were excused from Petitioner's case on April 9, 2002, after
conclusion of the trial and prior to sentencing, upon Petitioner's request (Trial Court Transcript,
Vol. XXIV at 2-8).

stated that he had not reviewed the Trial Court transcript nor the evidence actually presented at trial, because it was not available as of the date of his affidavit.  *Id.* at 5. He therefore stated that he "assume[d]" that certain evidence was either presented, or withheld from the jury.  *Id.*  The Court cannot discern a supportable claim of ineffective assistance of counsel from this bare and conclusory allegation by a post-conviction investigator who did not actually examine any evidence presented at trial.  Further, because Petitioner does not identify with any specificity the evidence he believes was added or omitted, nor the relevance of this evidence to his conviction, Petitioner has failed to establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694. Conclusory allegations without supporting factual averments are insufficient to support a claim of ineffective assistance of counsel, and this bare, conclusory allegation certainly does not support the finding that Mr. Morphew failed to investigate this case.  *See Fisher*, 38 F.3d at 1147.

> 2.    In examining the evidence relating to the victims [sic] injuries in this case, your Affiant has found that the injuries sustained by the victim, [JK], could not have physically been created by the Defendant.
>
> 3.    The witness for the prosecution, Joseph Taylor, gave a statement that Jamie Holloway and the victim were in a dispute over the Defendant while in the car and [JK] attempted to hit Jamie Holloway with a bottle, when Ms. Holloway retaliated by striking the victim in the head with a bottle.

(Doc. # 10 at Ex. A, pp. 2-3).

Here, Petitioner apparently argues that his trial counsel failed to investigate and develop the theory that it was actually Jamie Holloway, not Petitioner, who caused JK's head injury. First, Mr. Pugliese avers that he believes that the head injury sustained by JK could not have been created by Petitioner. *Id.* at 2. He appears to base this belief on JK's statement that Petitioner may have struck her from behind with a bottle to create the injury on her head. He states that, upon examining her medical records, he believes that the injury is "inconsistent to direction and area of impact as stated by the alleged victim." *Id.* at 3. Therefore, he believes that "at least one other person was present during this confrontation," which is presumably a reference to Ms. Holloway. *Id.* In his Petition, Petitioner further argues that Ms. Holloway "could have testified . . . that she had had [sic] an altercation with the victim [JK] and that when the alleged victim attempted to strike her with a beer bottle, she retaliated in self-defense," thereby causing the injury to JK's head (Doc. # 10 at 41).

First, with regard to Mr. Pugliese's claim that JK's injury could not have been caused by Petitioner, the Court finds that Petitioner has again failed to provide any support for this theory. Petitioner has not identified or provided any medical or forensic evidence that would bolster this claim. Therefore, as before, the Court cannot discern a supportable claim of ineffective assistance of counsel from this bare and conclusory allegation by a post-conviction investigator. Conclusory allegations without supporting factual averments are insufficient to support a claim of ineffective assistance of counsel, *Fisher*, 38 F.3d at 1147, and Petitioner has failed to establish "a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  As such, the Court will only examine in depth Petitioner's claim that trial counsel failed to investigate whether JK's injury was actually caused by Ms. Holloway.

JK testified that, on the night in question, she asked Petitioner to meet her because she wanted to borrow money from him (Trial Court Transcript, Vol. XVIII at 223-24).  She stated that when Petitioner arrived at the meeting place, he was driving Nahtania Garcia's car, and Petitioner insisted that she get into the car.  *Id.* at 226-28. Next, she testified that Petitioner drove to a parking lot where he assaulted her inside of the car.  *Id.* at 232-34.  Specifically discussing the head injury, JK testified as follows:

> A:   As soon as I turned and opened the door and I started to get out, he grabbed me with one hand and with the other hand, he hit me very hard in the back of the head.
> Q:   You said the other hand.  What hand was that?
> A:   I don't know.  He just had one hand pulling me back in the car and it was probably his right hand he hit me.
> Q:   Could you see - - were you looking at him directly when he hit you? In the process of getting out of the car, could you see him out of your peripheral vision?
> A:   I wasn't really looking at him.

*Id.* at 236-37.

On March 8, 2002, Petitioner presented his version of the events that occurred the night of the assault on JK.  He stated that he and JK engaged in consensual sexual intercourse earlier that evening at approximately 8:30 p.m. (Trial Court Transcript, Vol. XXII at 69).  Petitioner testified that after engaging in sexual intercourse with JK, a friend came to pick him up from Una Martinez's house, and he did not drive Nahtania

Garcia's car that night.  *Id.* at 70, 98.  He then testified that while JK called him later that night and attempted to set up a meeting with him, he did not meet her, and instead, he spent the entire night with Jamie Holloway.  *Id.* at 64-65.  He further stated he was not with JK when she was hit over the head or sexually assaulted, and that he did not hit her over the head or sexually assault her.  *Id.* at 65-66.

In further support of the theory that trial counsel failed to investigate Ms. Holloway, Mr. Pugliese avers that Mr. Joseph Taylor previously stated that Ms. Holloway caused JK's head injury (Doc. # 10 at Ex. A, p. 3).  Mr. Taylor's alleged prior statement has not been provided to the Court.  However, Mr. Taylor testified at trial on March 8, 2002.  He stated that he was the former fiancé of Ms. Garcia, Petitioner's daughter, and that he was in a relationship with Ms. Garcia at the time of the assault on JK (Trial Court Transcript, Supplemental Record at 105).  He then testified that on the night of the assault on JK, he was living at Una Martinez's house with Ms. Garcia and Petitioner.  *Id.* at 107.  He stated when Petitioner left the residence at around 9:00 or 10:00 p.m., JK was not with him, and had not been at the residence earlier in the day. *Id.* at 108.  He testified that Petitioner took Ms. Garcia's car when he left, and did not return with the car until sometime after 1:30 a.m. and before 7:30 a.m.  *Id.* at 110-11. Finally, he testified that when the police arrived at the residence at around 8:00 a.m., and proceeded to search the house, Petitioner escaped detection by hiding under the bed in Ms. Garcia's room.  *Id.* at 115-16.

Upon cross-examination, defense counsel impeached Mr. Taylor regarding

his decision to provide evidence against Petitioner, and any previous statements by

Mr. Taylor as follows:

> Q:   Now, this event occurs on October 8th of the year 2000; is that
>       correct?
> A:   Yes.
> Q:   And between October 8th of 2000, and September 26th of 2001,
>       you did not come forward to the police and say, let me tell you my
>       story, did you?
> A:   No, . . . .
> Q:   What was the date of your domestic violence case on [Nahtania]
>       Garcia?
> A:   Well, I was charged - - the police were called on September 26th;
>       I would say it was five days laters [sic], I got charged with it.
> Q:   The events occurred on September 26th, didn't they?
> A:   Yes.
> Q:   That's the day that you called Investigator Fred Cope and said,
>       I want to give you a bunch of information; isn't that true?
> A:   I told him, if you want to talk to me about what the case is
>       pertaining to, I will talk to you.
>       . . . .
> Q:   And on September 26th of 2001, your relationship with [Nahtania]
>       Garcia comes to an end?
> A:   Yeah, after having a series of problems because of these cases.
> Q:   And you commit domestic violence?
> A:   Yes.
> Q:   And you plead guilty to that?
> A:   Yes, I did.
> Q:   And in revenge, because you're really angry, you come forward
>       with this story, don't you?
> A:   No.

(Trial Court Transcript, Supplemental Record at 131-33; 136-37).

Further, on re-cross examination, defense counsel asked Mr. Taylor the following

questions:

| | | |
|---|---|---|
| Q: | You indicated you were contacted by the district attorney's office before September 26th of '01? | |
| A: | Yes. | |
| Q: | But, at that time, your testimony was the opposite of what it is today; is that correct? | |
| | MR. STOREY: | I object, there was no testimony. |
| | THE COURT: | Objection sustained. |
| Q: | (By Mr. Morphew) Your position with respect to this case was 180 degrees from where it is today; is that correct? | |
| A: | No. | |

*Id.* at 142.

After reviewing the relevant testimony and state court records, the Court

disagrees with Petitioner's assertion that trial counsel failed to investigate the theory

that Ms. Holloway caused JK's injury.  First, based upon the record made by trial

counsel, and trial investigator Don Brandsma, it is apparent that Ms. Holloway was

both contacted and interviewed prior to trial (Trial Court Transcript, Vol. XXI at 48-49).

However, Mr. Brandsma stated that Ms. Holloway was not "anxious to testify" because

her recollection of the events was vague, and she was using both alcohol and drugs

very heavily at the time of the incident.  *Id.* at 47.  Petitioner's trial counsel also stated

that he had spoken with Ms. Holloway, but that her story was apparently inconsistent

with the story presented by Petitioner, and moreover, that he was "under an ethical

responsibility to not bring [witnesses] into court and to put on testimony that [he]

believe[d] to be untrue . . . ."  *Id.* at 49.  Further, to the extent that Mr. Taylor previously

provided a different story regarding Ms. Holloway, defense counsel impeached

Mr. Taylor regarding his prior relationship with Ms. Garcia, his domestic violence

charges, and his motives for deciding to testify against Petitioner, and any prior stories he may have provided.

Considering all of the above, the Court finds that trial counsel was aware of Petitioner's belief that Ms. Holloway caused JK's injury, but made the strategic decision not to present this defense due to serious problems with the credibility and honesty of Ms. Holloway's potential testimony.  The Court will not second guess this reasonable decision.  *See Chandler v. United States*, 218 F.3d 1305, 1314 n. 15 (11th Cir. 2000) (finding that even if the record is incomplete or unclear about counsel's actions, it is still presumed that counsel exercised reasonable professional judgment).  Moreover, the mere fact that the defense which Petitioner's counsel chose to present at trial was unsuccessful does not prove ineffectiveness of counsel.  *Id.* at 1314.  Finally, because the Court finds it possible that trial counsel's failure to present evidence related to Ms. Holloway was a "difficult but thoughtful tactical decision," the Court must presume that counsel's conduct was "within the range of competency."  *Harris*, 885 F.2d at 1368. Petitioner has failed to overcome the "strong presumption" that trial counsel's performance falls within the range of "reasonable professional assistance," *Strickland*, 466 U.S. at 689, and therefore, the Court finds this claim to be without merit.

    4.      The alleged victim [JK] perjured herself under oath, relating to the events that actually occurred.

    5.      The Affiant after careful examination of the statements made by the victim [JK], has seen numerous inconsistencies in the victim's testimony.

(Doc. # 10 at Ex. A, pgs. 2-3).

Here, Mr. Pugliese alleges that he has examined the pre-trial statements of JK, and apparently has located numerous inconsistencies in her story. *Id.* at 2. He states that he believes that JK committed perjury during the trial, apparently due to his belief that her head injury was not caused by Petitioner. *Id.* With regard to these claims, the Court has reviewed JK's entire testimony presented at trial. The Court finds that during the cross-examination of JK, defense counsel made numerous attempts to impeach JK with references to her prior inconsistent statements, including, but not limited to, her prior statement that she walked to the area where she met Petitioner, as opposed to her trial testimony that she drove to their meeting place, (Trial Court Transcript, Vol. XIX at 40), her prior statement that Petitioner forced her to use drugs, as opposed to her trial testimony that she used the drugs voluntarily, *id.* at 44, her prior statements to medical personnel regarding whether she had sexual intercourse with other men during the days prior to the sexual assault, *id.* at 42-44, and her prior inconsistent statement regarding the description of the car that Petitioner was driving the night of the assault, *id.* at 41.

After review of all the relevant evidence and testimony, the Court finds that JK was impeached extensively at trial by defense counsel in regard to her prior inconsistent statements surrounding the night of the assault. Therefore, everything that Mr. Pugliese avers in his affidavit regarding JK's prior inconsistencies and alleged perjury was brought out at trial. As such, the jury had before it all the facts necessary to determine whether, in light of JK's prior statements, her trial testimony was credible. By finding Petitioner guilty, the jury either found JK to be a credible witness, or rejected

those statements that they found to be incredible, and concluded that, even without

these statements, there was sufficient evidence to prove Petitioner's guilt beyond a

reasonable doubt.  *See Pope v. Netherland*, 113 F.3d 1364, 1371 (4th Cir. 1997)

(habeas relief not warranted based on alleged perjury of witness regarding the extent

of her involvement with drugs where facts relating to her involvement were presented to

the jury).  The Court finds that Mr. Pugliese's unsupported and conclusory allegations

do not provide any grounds for finding that defense counsel failed to perform an

adequate investigation of this case.

Finally, upon review of the entire record, the Court finds that the evidence against

Petitioner in this case was quite strong.  It consisted of, *inter alia*, testimony from both of

the victims linking Petitioner to the assaults against them, fingerprint evidence that

linked Petitioner to CG's car on the night of the assault, testimony that CG's car was

new and that Petitioner had not had access to the car prior to the assault, medical

evidence consisting of Petitioner's semen found in JK the morning after she accused

Petitioner of sexually assaulting her, JK's blood found in Nahtania Garcia's car, which

JK alleged that Petitioner drove and used during his physical and sexual assault of her,

and Joseph Taylor's statement that Tomas Garcia took Nahtania Garcia's car the night

of the assault on JK and did not return the car until some time in the early morning.

Given the strength of the evidence in this case, the majority of which Petitioner has not

complained about, the Court finds that there is no reasonable probability that, but for

counsel's alleged unprofessional errors in failing to investigate, "the result of the trial

would have been different." *Strickland*, 466 U.S. at 694.  Likewise, given the evidence

against Petitioner, it cannot be said that counsel's performance in any way

"undermine[s] confidence in the outcome." *Id.*  Therefore, on the basis of the Court's *de

novo* review using the standard set forth in *Strickland*, the Court finds that Petitioner's

claim that his trial counsel provided ineffective assistance of counsel based on his

failure to investigate is without merit.

> b.     *Failure to Interview and/or Call Witnesses*

Second, Petitioner asserts that the performance of trial counsel "fell below the

standard of competence . . . when he failed to interview and/or call witnesses on

[Petitioner's] behalf when those witnesses had exculpatory evidence that would have

been material to [Petitioner's] defense" (Doc. # 10 at 40).  The Trial Court and the CCA

examined this claim on its merits, accordingly, the Court's review is limited to whether

the state courts' determination  resulted in a decision that was contrary to, or involved

an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States.  *See* 28 U.S.C. § 2254(d)(1).

Applying the standard set forth in *Strickland*, 466 U.S. at 688, the Trial Court

made the following findings with the respect to Petitioner's claim of ineffective

assistance of counsel:

> [Petitioner] has come no where near establishing that [trial
> counsel's] conduct was below the *Strickland* standard of showing that
> particular acts or omissions of counsel fell outside the wide range of
> reasonably competent assistance.  This Court presided over trial in this
> case. [Trial counsel] was successful in discrediting victim [CG's] testimony
> through effective cross-examination and presentation of witnesses to

impeach the victim.  The jury acquitted the Defendant on a felony count of sexual assault (F4) with regard to this victim.  I find that [trial counsel] acted in a highly competent manner in his representation of [Petitioner]. Many times a decision not to call witnesses is sound trial strategy.

Also, Defendant demonstrates no basis for showing a reasonable probability that different conduct by [trial counsel] would have generated a different verdict result.  *See id.* at 694.

(Trial Court Record, Vol. 2 at 299).

In addressing this portion of Petitioner's claim of ineffective assistance of

counsel, the CCA held:

To establish a claim for ineffective assistance of counsel, a defendant must show that (1) counsel's performance was outside the range of professionally competent assistance; and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome of the trial would have been different.  *Strickland v. Washington*, 466 U.S. 668 (1984); *People v. Coney,* 98 P.3d 930 (Colo. App. 2004).

Here, defendant claimed that counsel was ineffective for failing to call twenty witnesses who would have presented material testimony in his defense.  We do not agree.

Whether to call particular witnesses is a tactical decision within the discretion of counsel, who may reasonably conclude the testimony of certain witnesses would not be helpful.  *Davis v. People*, 871 P.2d 769 (Colo. 1994).

Defendant asserted that there were witnesses who could testify that one victim used drugs, lived with him, had a tattoo, and flirted with others. Such evidence would likely not have been admissible, and the drug use evidence, even if admissible, was cumulative.

Concerning the other victim, defendant asserted these witnesses could have provided an alibi; however, they appear to have been relatives, and thus, their credibility might have been suspect.  Moreover, defendant's fingerprint was found in the victim's car, which, the evidence established, was new and defendant had not previously had contact with it.

In addition, defendant has failed to demonstrate a reasonable probability that, had these witnesses testified, he would have been acquitted. Thus, he has failed to establish that he was prejudiced by counsel's performance.

(Doc. # 21 at Ex. D, pp. 17-18).

Petitioner has provided the affidavits of his daughters, Nahtania and Tatiana Garcia, his brother-in-law, Louis Martinez, his sister, Una Martinez, and a person identified as Mark Mares (Doc. # 10 at Exs. A-I). In general, these affidavits contain information regarding the affiants' impressions that trial counsel was unprofessional, and failed to provide adequate representation of Petitioner. *See id.* Nahtania Garcia also states that she could have provided an alibi for Petitioner on the day he was alleged to have assaulted CG. *Id.* at Ex. B. However, based upon trial counsel's statements on March 7, 2002, it is apparent to this Court that the decision not to call these witnesses was a strategic and ethical decision based upon trial counsel's estimation that these witnesses were not likely to be credible, and also were likely to present testimony that defense counsel believed to be dishonest (Trial Court Transcript, Vol. XXI at. 45-49). Further, "[w]hether to raise a particular defense is one aspect of trial strategy, and informed strategic or tactical decisions on the part of counsel are presumed correct, unless they were completely unreasonable, not merely wrong." *Anderson v. Attorney Gen. of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005) (internal quotation marks and citation omitted). Here, Petitioner has made no showing that counsel's decision not to call his family members as witnesses was not based on a valid strategic choice. *See Bullock v. Carver*, 297 F.3d 1036, 1047 (10th Cir. 2002) (finding

32

that defendant bears "the burden of showing that counsel's action or inaction was not based on a valid strategic choice.").  Petitioner has made no argument that would establish "a reasonable probability that, but for" counsel's failure to call these witnesses, "the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694. Moreover, considering the evidence of Petitioner's guilt presented by the People at trial, counsel's strategic decision not to call Petitioner's family members as witnesses likely would not have changed the jury's verdict.  As such, the Court finds that the state court's determination that Petitioner failed to demonstrate that his counsel's performance was deficient as a result of his strategic decision not to call Petitioner's family members as witnesses did not result in a decision that was contrary to, or involved an unreasonable application of, *Strickland*.  Therefore, the Court finds that Petitioner's claim of ineffective assistance of counsel should be dismissed with prejudice in its entirety.

### c.    Cumulative Error

Petitioner presents a redundant claim of cumulative error based upon ineffective assistance of counsel (Doc. # 10 at 42).  Based upon the Court's analysis as set forth above, the Court finds that this claim does not provide a basis for federal habeas relief.

### d.    Evidentiary Hearing

Petitioner requests that this Court conduct an evidentiary hearing (Doc. # 10 at 43-44).  A Petitioner is entitled to an evidentiary hearing on the issue of ineffective assistance of counsel "so long as his allegations, if true and not contravened by the

existing factual record, would entitle him to habeas relief." *Hammon v. Ward*, 466 F.3d 919, 927 (10th Cir. 2006) (internal quotation marks and citations omitted); *see also Correll v. Stewart*, 137 F.3d 1404, 1411 (9th Cir. 1998).  As the Court has determined that Petitioner's allegations are contravened by the factual record and he is not entitled to habeas relief, the Court need not conduct an evidentiary hearing.  *See id.*

Accordingly, it is ORDERED:

1.      Petitioner Tomas M. Garcia's Petition Under 28 U.S.C.  § 2254 For Writ of Habeas Corpus ("Petition") (Doc. # 1) is DENIED.

2.      This case is DISMISSED WITH PREJUDICE.

DATED:  May   14  , 2009

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge